Helen TORRES, a/k/a Mary Jane Perez a/k/a Baby Helen Perez, Appellant,

v.

The STATE of Texas, Appellee.

No. 57697.

Court of Criminal Appeals of Texas, Panel No. 2.

July 11, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

Ken J. McLean, Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis M. Bell and Kenneth Levi, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, TOM G. DAVIS and DALLY, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated robbery. V.T.C.A. Penal Code, Sec. 29.03. Punishment, enhanced by one prior conviction, was assessed at 15 years. V.T.C.A. Penal Code, Sec. 12.42(c).

Appellant contends that the trial court erred in refusing to submit her requested instruction on involuntary intoxication.

Appellant and Robert Miranda broke into the house of Margaret Garcia at 3:00 a. m. on the morning of July 18, 1975. Mrs. Garcia was first awakened by voices. When the lights in the room were turned on she saw Miranda standing in the room with a gun and the appellant nearby holding a knife. Both intruders threatened to kill Mrs. Garcia if she did not comply with their demands.

Mrs. Garcia was forced to go throughout her house gathering almost every item of value and then load them into her car. The car was ultimately loaded to capacity with rugs, pictures, furniture, appliances, and other household goods. During this procedure the appellant would sometimes hold the gun on Mrs. Garcia while Miranda was elsewhere.

The next morning Mrs. Garcia was forced to accompany appellant and Miranda to Garcia's bank to cash two checks they had forced her to write. They first went to a drive-in window. The teller refused to cash the checks as Mrs. Garcia did not have any identification. Mrs. Garcia suggested that she could cash the checks inside the bank. Miranda allowed Mrs. Garcia to go inside the bank.

Mrs. Garcia notified a police officer inside the bank of the robbery in progress. The officer went outside to investigate. Upon seeing the officer, Miranda ran from the scene. The officer pursued, and after an exchange of gunfire Miranda was wounded and apprehended.

Some ten minutes later other officers summoned to the scene found the appellant asleep in Mrs. Garcia's car. The car was still on the parking lot of the bank.

Mrs. Garcia testified that the appellant was taking the initiative and guiding the actions of Miranda when they first came into her house. Later, on the way to the bank, Mrs. Garcia noticed that the appellant seemed to be going to sleep. Although Mrs. Garcia did not see the appellant or Miranda take any pills, she stated that their actions during the episode led her to believe that both were on drugs.

The only defense witness was Robert Miranda. The record reflects that Miranda had already been convicted and sent to pris-

on for his part in the robbery. Miranda also admitted to another prior conviction.

Miranda testified that on the night of the offense he and the appellant had been at a bar until about 2:00 a. m. Miranda stated that he had been drinking and taking "pills" while there. From the bar he and the appellant went home.

According to Miranda, appellant had complained to him because he had not found a job. Appellant finally asked Miranda to take her home as she had a headache. Once at the house, Miranda mixed water, "Alka Seltzer," and "4 or 5" 250-milligram tablets of Thorazine for the appellant. Appellant was not told that the Thorazine tablets had been included in the mixture.

Miranda testified that Thorazine tablets were "downers, depressers and makes you drowsy and go to sleep." When asked why he drugged the appellant's medication, Miranda replied, "Well, we had been arguing about me not having a job and I wanted her to quit complaining about it."

Appellant did not testify.

Appellant requested a charge directing the jury to acquit her if they found that she was involuntarily intoxicated and further found that she did not act voluntarily in the commission of the offense because of this intoxication.[1] The trial court refused to give this charge.

In *Hanks v. State*, 542 S.W.2d 413, this Court reviewed a trial court's failure to charge on temporary insanity due to involuntary intoxication. This Court stated:

"Aside from the question of temporary insanity resulting from *involuntary intoxication* as a defense to crime,[1] this evi-

"[1] See *Carter v. State*, 12 Tex. 500 [1854]; *Colbath v. State*, 4 Tex.App. 76 (1878); Annot., 30 A.L.R. 761.

dence was not sufficient to raise the issue of involuntary intoxication. If appellant was aware that a suspected drug had been placed in his drink, as he testified, and in spite of such knowledge he drank

the beverage, any intoxication resulting therefrom could not be classified as *involuntary*. To constitute involuntary intoxication, there must be an absence of an exercise of independent judgment and volition on the part of the accused in taking the intoxicant. See *Johnson v. Commonwealth*, 135 Va. 524, 115 S.E. 673, and Annot., 30 A.L.R. 761." [Emphasis in original.]

Other jurisdictions are in accord with this view. *State v. Plummer*, 117 N.H. 320, 374 A.2d 431 (1977); *City of Minneapolis v. Altimus*, 306 Minn. 462, 238 N.W.2d 851 (1976); *Burrows v. State*, 38 Ariz. 99, 297 P. 1029 (1931).

In the present case, there is evidence that the appellant did not know that any intoxicant was included in the preparation she drank. Although she voluntarily drank the preparation, unless she knew it contained the drug her actions were not a volitional consumption of the intoxicant. *See, State v. Rice*, 379 A.2d 140 (Me.1977). We find the evidence was sufficient to show involuntary consumption of the intoxicant under *Hanks.*

This conclusion leaves us with two issues. First, does the defense of involuntary intoxication exist in this jurisdiction, and second, did the evidence entered at trial raise this defense and entitle appellant to a defensive charge.

As can be drawn from *Hanks v. State*, supra, no prior case in this jurisdiction has spoken directly to the issue of involuntary intoxication. Of the two Texas cases cited, only one sheds any light on the issue.

In *Colbath v. State*, supra, the question presented involved voluntary intoxication. The Court discussed the common law basis for the rule that intoxication is no defense to criminal responsibility, and cited authority setting out two exceptions to this rule. One of these exceptions was involuntary intoxication resulting from "drugs administered by an unskillful physician." 4 Tex.

1. V.T.C.A. Penal Code, Sec. 8.04(d), defines intoxication as follows:

"For purposes of this section 'intoxication' means disturbance of mental or physical capac-

ity resulting from the introduction of any substance into the body."

App. at 78. From this exception the law of involuntary intoxication has evolved. *See, City of Minneapolis v. Altimus*, supra.

In some jurisdictions the defense of involuntary intoxication is provided for by statute. *State v. Palacio*, 221 Kan. 394, 559 P.2d 804 (1977); *Staples v. State*, 74 Wis.2d 13, 245 N.W.2d 679 (1976). No statute in this jurisdiction is directly controlling.

V.T.C.A. Penal Code, Sec. 8.04, provides that voluntary intoxication is no defense to the commission of crime. Section 8.04, supra, does provide that the temporary insanity caused by intoxication can be evidence in mitigation of punishment, and if raised, the court must charge the jury on this law. This statute does not speak to involuntary intoxication.

The common law disfavor with the defense of intoxication is that it would allow a person to avoid criminal responsibility because of his voluntary act in rendering himself of unsound mind. *See, Burrows v. State*, supra; *Colbath v. State*, supra; *Carter v. State*, supra. This consideration does not exist when the intoxication is not self-induced.

V.T.C.A. Penal Code, Sec. 8.01, relieves a person of criminal culpability if as the result of mental disease or defect he "did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of law." It would be inconsistent to deny this defense to a person who loses his ability to conform his conduct or perceive its culpability because of involuntary intoxication. We find that the defense of involuntary intoxication is well founded in the common law and implicit in our statutory scheme.

We also note that other jurisdictions have recognized this defense without specific statutory guidance. *State v. Rice*, supra; *City of Minneapolis v. Altimus*, supra; *State v. Mriglot*, 15 Wash.App. 446, 550 P.2d 17 (1977); *People v. Murray*, 247 Cal. App.2d 730, 56 Cal.Rptr. 21 (1967); *Easter v. District of Columbia*, 209 A.2d 625 (D.C. Ct.App.1965); *Burrows v. State*, supra. These jurisdictions do differ, however, on the applicable test to determine if the defendant's mental state was such as to avoid culpability for his acts.

The jurisdictions most recently reviewing the question of involuntary intoxication have held that the test used for insanity is also applicable to involuntary intoxication. *City of Minneapolis v. Altimus*, supra; *State v. Mriglot*, supra; *People v. Murray*, supra. We agree. We perceive of no reason to stray from the test already codified as the level of mental dysfunction necessary to relieve a defendant from the criminal consequences of his acts. *See*, Sec. 8.01, supra.

■ We hold that involuntary intoxication is a defense to criminal culpability when it is shown that:

(1) the accused has exercised no independent judgment or volition in taking the intoxicant; and

(2) as a result of his intoxication the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

■ Appellant is entitled to a charge on affirmative defenses raised by the evidence. *Day v. State*, Tex.Cr.App., 532 S.W.2d 302; *Thompson v. State*, Tex.Cr.App., 521 S.W.2d 621. As noted above, we find the evidence sufficient to raise the issue of whether the intoxicant was administered to the appellant without her knowledge.

■ Although the evidence of appellant's state of mind at the time of the offense is meager, it is sufficient to raise the issue for submission to the jury. The victim testified that appellant seemed "drugged," and the circumstances surrounding her arrest are some evidence of her mental state. This issue, just as the parallel issue of insanity from mental defect or disease, ". . . lies in the province of the jury, not only as to the credibility of the witnesses and weight of the evidence, but as to the limits of the defense itself." *Graham v. State*, Tex.Cr.App., 566 S.W.2d 941, 952. We find that the appellant was entitled to have the

issue of involuntary intoxication submitted to the jury.

█ Finally we observe that the requested charge submitted by the appellant was not a correct charge on the law as outlined above. This request was sufficient to bring the omission complained of to the trial court's attention, and is thus sufficient to preserve the error for our review. *Stiles v. State*, Tex.Cr.App., 520 S.W.2d 894; Art. 36.15, V.A.C.C.P.

We hold that the trial court erred in failing to charge the jury on the affirmative defense of involuntary intoxication.

The judgment is reversed and the cause remanded.