

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-089-CR

KERRY BOLLMAN                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Kerry Bollman of assault on a public servant

and assessed his punishment at ten years' confinement in the Institutional

Division of the Texas Department of Criminal Justice and a fine of $10,000.

The trial court sentenced him accordingly. In two points, Appellant argues that

the evidence at trial was insufficient to support the jury's rejection of his

---

[1] See Tex. R. App. P. 47.4.

involuntary intoxication defense and that the trial court reversibly erred by failing to instruct the jury in the punishment charge that it could not consider unadjudicated extraneous offenses unless they were proven beyond a reasonable doubt. Because we hold that the evidence is factually sufficient to support the jury's verdict and that the trial court did not reversibly err, we affirm the trial court's judgment.

**Facts**

On the morning of August 25, 2007, Appellant was an inmate of the Denton County Jail. He slipped, fell, and injured his left wrist and the ribs on the left side of his body. A guard arrived to assist Appellant, and Appellant was given an injection of Toradol, a non-narcotic, nonsteroidal anti-inflammatory drug for musculoskeletal pain. Shortly after the injection was administered, at about 11:30 a.m., Appellant was transferred from the jail to the hospital.

Appellant testified that after he arrived at the hospital, the medical staff gave him some kind of pill for his pain. He did not recall whether he was given one pill or more than one pill.

Officer Kerner, the Denton County detention officer who transported Appellant to the emergency room that day, testified that he was with Appellant until shift change at 3:00 p.m. Officer Kerner said that he and Appellant engaged in small talk while hospital staff treated Appellant and that several

2

times during the conversations, Appellant asked him what time his shift change would be. Officer Kerner testified that Appellant asked him five or six times if Officer Welsh would relieve Officer Kerner. (Officer Kerner is much larger physically than Officer Welsh.) Officer Kerner also testified that he was unable to tell Appellant who would replace him at shift change. During the time that Appellant was with Officer Kerner, Appellant did not act crazy or silly.

Officer Welsh did, indeed, replace Officer Kerner at shift change. Officer Welsh arrived at approximately 2:45 p.m. to relieve Officer Kerner at 3:00 p.m. Officer Welsh testified that he and Appellant had a conversation and that Appellant was acting in "[n]ormal, everyday-person demeanor." Officer Welsh and Appellant waited about an hour for Appellant to be discharged. Because Appellant was in pain when he was discharged, Officer Welsh physically assisted him into the van in a wheelchair. As Officer Welsh was securing Appellant's seatbelt across his chest, Appellant managed to grab Officer Welsh in a chokehold. The men began to struggle, and they jumped out of the van and onto the ground. Officer Welsh was in pain as they rolled on the ground. Officer Welsh testified that he was nearly unconscious when a civilian arrived and began trying to pull Appellant off of Officer Welsh. Officer Welsh was able to get loose and place Appellant in a leg lock. Officer Welsh testified that

3

Appellant was not acting crazy at the time he began to put Appellant into the van and that Appellant had actually asked for Officer Welsh's help.

Two hospital security guards arrived and helped Officer Welsh handcuff Appellant. After Appellant was handcuffed, Officer Welsh called for backup, and Corporal Pena arrived approximately five minutes later. While Officer Welsh waited for a patrol officer, Appellant sat silently in the parking lot.

Hospital security guards David Bowe and Don Smith came to the aid of Officer Welsh. Bowe testified that he had been monitoring the security cameras when he saw Appellant being pushed in the wheelchair by Officer Welsh. When he next saw them, Appellant and Officer Welsh were on the ground wrestling. Bowe and Smith ran to Officer Welsh's aid. After Appellant was handcuffed, he was compliant and not acting in an unusual manner. After Bowe left the scene, he reviewed the tape of the incident. He testified that, while watching the tape, he saw Appellant look back over his left shoulder as he was being wheeled to the van.

Smith testified that he handcuffed Appellant after he arrived on the scene. He also testified that Appellant complied with his requests while being handcuffed. In Smith's opinion, Appellant's demeanor was "quiet and calm," and he was not acting in an unusual manner. Albert Freeland, the civilian who

4

had first assisted Officer Welsh, testified that Appellant cursed at him and stated, "This ain't any of your business."

Corporal Pena of the Denton County Sheriff's Office, the officer who transported Appellant back to the jail, testified that he did not notice anything that indicated Appellant needed mental health treatment. He testified that there was no conversation between Appellant and himself and that Appellant did not exhibit any unusual behavior, although he did testify that Appellant would not respond to him and appeared to have shut down.

Appellant called as defense witnesses his mother and his two neighbors. Appellant also testified on his own behalf. He stated that he remembered the events in the hospital and remembered starting toward the van. He testified that he could not recall if he had been given more than one pill. He denied recalling any conversations with Officer Kerner or attacking Officer Welsh. He did recall hitting the ground, but he did not remember Freeland's pulling him off of Officer Welsh or having any conversation with Freeland. Appellant testified that he did not intentionally or purposely attack Officer Welsh and that he only vaguely recalled riding back to the jail with Corporal Pena.

Appellant related an incident in Denton County Jail that occurred on May 29, 2007, almost three months before the incident with which he was charged. When he had originally booked into jail on May 25, he experienced pain. He

5

testified that he was given pain medication after having turned it down several times. On other occasions, however, he accepted the pain medication.

Appellant called Michael Clark, a sergeant assigned to booking for the sheriff's office, as a witness. Clark testified that on May 29, 2007, Appellant was in his cell naked and scratching himself because he believed he had bugs crawling on him. Appellant then grabbed his own arm and pulled it really hard. Clark, with the assistance of two other officers, subdued Appellant and handcuffed him. Appellant screamed that they were stabbing him with needles, and he resisted the handcuffs, so Clark had him placed in a restraint chair. Appellant denied that he was under the influence of drugs or alcohol. At some point, Clark ordered two officers to release Appellant from the restraint chair. Officer Clark went into the cell and ordered Appellant to kneel so that he and the other two officers could safely exit the cell. Appellant refused, jerked away from one officer, got loose from the other officer, and began screaming. Clark pulled out his taser and ordered Appellant to the ground. Appellant refused, screamed at Clark to tase him, and then began advancing toward Clark. Clark shot Appellant with the taser, and Appellant fell to the ground. Appellant had to be placed in the restraint chair again.

Appellant's mother, Claudia Bollman, and Madalyn and Larry Edens, Appellant's neighbors, also testified on Appellant's behalf. Mrs. Bollman

6

testified that she had seen Appellant become aggressive or act "absolutely silly, stupid, crying, one or the other" when he had adverse reactions to pain medications. Mr. and Mrs. Edens testified that when Appellant is given pain killers or anesthetics, he can become very violent or argumentative, almost paranoid.

Michael Tribble, a paramedic working at the health facility of the Denton County Jail, testified that Appellant's medical records showed that on May 26, 2007, Appellant was prescribed one or two Darvocet pills every six hours as needed. He also testified that the Darvocet would not have been dispensed without Appellant's request. He also testified that Appellant was prescribed a regimen of Ativan for treatment of alcohol withdrawal and an injection of Thiamin on the same date.

On May 29, 2007, Appellant had been placed in a safety cell because he had become unruly, yelling and banging on the wall. Appellant would not stop this behavior when approached by officers. Tribble testified that the records also indicated that earlier that morning, Appellant had been moved to a safety cell for hallucinations and placed in a restraint chair after having been tased.

### Evidence Sufficient to Reject Appellant's
### Involuntary Intoxication Defense

In his first point, Appellant contests the sufficiency of the evidence to support the jury's rejection of his involuntary intoxication defense.[2] Insanity is an affirmative defense to prosecution.[3] Involuntary intoxication that causes insanity is included within the affirmative defense of insanity.[4] The defendant has the burden of proving an affirmative defense by a preponderance of the evidence.[5]

As Judge Cochran explained in her thoughtful dissent in *Watson v. State*,[6] discussing the development of factual sufficiency review in criminal cases,

> Review for legal sufficiency under the *Jackson* "beyond a reasonable doubt" standard is required for every element that

---

[2] Appellant does not explicitly specify that he challenges only the *factual* sufficiency of evidence supporting the jury's rejection of involuntary intoxication, but his argument and authorities, including his statement of the standard of review, make that fact clear. We therefore likewise address only factual sufficiency.

[3] Tex. Penal Code Ann. § 8.01 (Vernon 2003).

[4] *See Mendenhall v. State*, 77 S.W.3d 815, 817–18 (Tex. Crim. App. 2002); *Torres v. State*, 585 S.W.2d 746, 748–50 (Tex. Crim. App. 1979).

[5] Tex. Penal Code Ann. § 2.04(d).

[6] 204 S.W.3d 404, 421 (Tex. Crim. App. 2006) (Cochran, J., dissenting).

8

supports a conviction, but a sufficiency-of-the-evidence review under civil standards is appropriate when reviewing affirmative defenses in which the defendant bears a burden of "preponderance of the evidence." In *Meraz*, this Court held that the "factual conclusivity clause" of the Texas Constitution applies when the defendant bears the burden of proof by a preponderance of the evidence.

And this Court followed *Meraz* in *Bigby v. State*, by reviewing the sufficiency of the evidence that supported the jury's rejection of the defendant's affirmative defense of insanity in a capital murder trial. In *Bigby*, as in *Meraz*, the burden of proof was on the defendant to establish his defense by a preponderance of the evidence. In that context, use of the civil standards adopted by the Texas Supreme Court is entirely appropriate. In these cases, Texas courts have the power and authority to conduct a sufficiency review of the evidence under controlling supreme court precedent because: (1) both the burden of production and persuasion is on the defendant; and (2) that burden is the civil standard of proof "by a preponderance of the evidence." Both *Meraz* and *Bigby* are in line with the historical and jurisprudential underpinning of Texas civil law and the Texas Constitution. We followed our brethren on the Texas Supreme Court in applying the factual conclusivity clause to those "questions of fact" for which the proponent bears the burden of proof by a preponderance of the evidence. And we should continue to follow that court's development of sufficiency-of-the-evidence review when the proponent bears the burden of proof by a preponderance of the evidence.[7]

Therefore, upon review of this point, we must consider all the evidence relevant to the issue of insanity and determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust.[8]

---

[7] ▲ *Id.* at 436–37 (citations and footnotes omitted).

[8] ▲ *Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990).

9

In our review, we may not usurp the function of the trier of fact by substituting our judgment in the place of its verdict.[9] We may sustain this point only if, after detailing the relevant evidence and stating in what regard the contrary evidence greatly outweighs the evidence supporting the verdict, we also clearly state why the verdict is so against the great weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias.[10]

Appellant did not recall his conversation with Officer Kerner or the assault on Officer Welsh. He, his mother, and his neighbors testified only that he had a bad reaction to pain medication. Nowhere does Appellant direct us to any evidence that, as a result of intoxication caused by taking pain medication, he did not know that his conduct was wrong.

To the extent that Appellant's insanity defense is implicit in the facts recounted, after examining the entire record, we cannot say the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust.[11] There was evidence that Appellant planned the assault in his repeated

---

[9] *See id.* at 154.

[10] *Id.* at 154 n.2; *see Clewis v. State*, 922 S.W.2d 126, 135–36 (Tex. Crim. App. 1996).

[11] *See Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1162 (1995).

questioning of Officer Kerner regarding the time of shift change and whether Officer Welsh, the smaller deputy, would be replacing him. There was evidence that Appellant glanced over his shoulder before attacking Officer Welsh. There was evidence that Appellant discouraged Freeland from coming to Officer Welsh's aid. The only evidence of insanity was that in the past Appellant had had a bad reaction to pain medication that caused him to be silly or unpleasant and his own testimony regarding memory loss.

No expert testified either on behalf of Appellant or on behalf of the State. The only evidence was lay witness testimony. As the State argues, quoting *Bigby*, "Ultimately the issue of insanity at the time of the offense excusing criminal responsibility lies in the province of the jury, not only as to the credibility of the witnesses and the weight of the evidence, but also as to the limits of the defense itself."[12] As the State points out, the trier of fact may consider evidence such as the defendant's demeanor both before and after the commission of the offense, as well as any attempts to evade police or to conceal incriminating evidence.[13] The trier of fact may consider expressions of

---

[12] *Id.* at 878.

[13] *See Torres v. State*, 976 S.W.2d 345, 347 (Tex. App.—Corpus Christi 1998, no pet.).

regret or fear of the consequences of the defendant's actions, other possible motives for the offense, and other explanations for a defendant's behavior.[14]

The jury could have found the evidence defeating Appellant's insanity defense more credible and of greater weight than the evidence of Appellant's "bad reaction" to pain medication. We note that the jury heard evidence that directly after the attack, Appellant was taken back to the jail, not to a mental health unit. The jury also heard evidence that in the summer of 2007, while Appellant was speaking over the jail telephone, he told friends and family that he would not be in jail for very long and that the "system has loopholes."

As for the evidence of the May 2007 episode in which Appellant was found naked in his cell and screaming about bugs crawling on him and claiming the officers were stabbing him with needles, the jury could have believed, and the record supports, that the episode occurred because Appellant was suffering from alcohol withdrawal. Additionally, Appellant offered evidence that he was well aware of his "bad reaction" to pain medication and that his mother and neighbors were also aware of his response to pain medication. He argues that his intoxication was involuntary, yet Defendant's Exhibit Three reflects that on August 4, 2007, a few weeks before the incident with which he was charged,

---

[14] *Id.* at 347–48.

12

Appellant made the following request, "The intensity of my headaches I [sic] very bad. I need to see a doctor and am in need of pain medication please."

Voluntary intoxication is not a defense to the commission of a criminal offense,[15] although it may be considered by the jury in mitigation of punishment.[16] Appellant's burden was to prove by a preponderance of the evidence that the intoxication was involuntary and that the intoxication was to such a degree that it rendered him legally insane.[17] We hold that there was some evidence that intoxication was involuntary, but the evidence that Appellant requested pain medication not long before going to the hospital and that he voluntarily took the pain medication when it was offered cuts against the alleged involuntariness of the intoxication.

Finally, Appellant directs us to no evidence in the record that he was unaware of the wrongfulness of his conduct, but the record does contain evidence that he was aware of the wrongfulness of his conduct, that he planned the conduct, and that it was not a spontaneous outburst.[18]

---

[15] Tex. Penal Code Ann. § 8.04(a) (Vernon 2003).

[16] *See id.* § 8.04(b); *Tucker v. State*, 771 S.W.2d 523, 533 (Tex. Crim. App. 1988), *cert. denied*, 492 U.S. 912 (1989).

[17] *See* Tex. Penal Code Ann. §§ 2.04(d), 8.01(a), 8.04(b).

[18] *See id.* § 8.01(a).

13

Considering the entire record, and applying the appropriate standard of review, we hold that the verdict is not so against the great weight and preponderance of the evidence of insanity as to be manifestly unjust. We overrule Appellant's first point.

**Absence of Jury Instruction Harmless**

In his second point, Appellant argues that the trial court was obligated to instruct the jury sua sponte in the punishment charge that the jury could not consider unadjudicated extraneous offenses unless it believed beyond a reasonable doubt that Appellant had committed them. Appellant points out that the State proved that he had prior convictions for arson, assault-family violence, and resisting arrest. Additionally, the State offered evidence to prove two incidents of aggravated assault on a public servant and one incident of assault on a public servant. The trial court did not instruct the jury that it could not consider those offenses without first finding that the State had met its burden of proving each of the extraneous offenses beyond a reasonable doubt. Appellant did not object to the charge and did not request the instruction.

Appellant had been previously convicted of arson, assault-family violence, and resisting arrest. Consequently, no limiting instruction was required because those offenses had already been subjected to judicial testing; that is, because

14

Appellant had already been convicted of those offenses, he had already been found guilty of those offenses beyond a reasonable doubt.[19]

We next address whether such an article 37.07 instruction was required in regard to the unadjudicated offenses of aggravated assault on a public servant and assault on a public servant. Appellant does not provide us any details concerning the unadjudicated offenses that the State proved. Appellant merely cites us to thirty-three pages in the record. In the interest of justice we have examined those pages. Appellant appears to complain about evidence that he struck a police officer and that he brandished a knife in an aggressive manner when police officers responded to a domestic disturbance call.

Appellant relies on *Huizar v. State* to argue that a charge instructing the jury in accordance with article 37.07 of the code of criminal procedure is mandatory even if not requested.[20] At the punishment stage, evidence may be offered as to any matter the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he

---

[19] *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004).

[20] 12 S.W.3d 479, 484 (Tex. Crim. App. 2000).

15

could be held criminally responsible.[21]  When the court admits evidence of extraneous misconduct by the accused, the court must instruct the jury that it cannot consider this evidence for any purpose unless it is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant.[22]  The failure to give this instruction is charge error even in the absence of a request or objection by the defendant.[23]

Appellant did not request the instruction and did not object to the jury charge for its failure to contain an article 37.07 instruction.  We, therefore, hold that the trial court erred by failing to include the article 37.07 instruction in the jury charge, but, under the *Almanza* construct, we must determine whether Appellant suffered egregious harm as a result of the trial court's error.[24] Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or

---

[21]⏶ Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2008).

[22]⏶ *Huizar*, 12 S.W.3d at 484.

[23]⏶ *Id*.

[24]⏶ *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see also Ellison v. State*, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

16

make the case for conviction or punishment clearly and significantly more persuasive.[25]

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[26] The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.[27] Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis.[28]

Appellant does not explain why the admission of these offenses was particularly harmful, except to say that they were "the same nature as the one of which the jury had already convicted [A]ppellant." We have considered the record in its entirety. It contains evidence of Appellant's past convictions, his violent and manipulative conduct in jail, and his commission of the offense now before this court. The evidence also reflects Appellant's statement that he

---

[25] *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991).

[26] *Almanza*, 686 S.W.2d at 171; *see generally Hutch v. State*, 922 S.W.2d 166,172–74.

[27] *Almanza*, 686 S.W.2d at 174.

[28] *Ellison*, 86 S.W.3d at 227; *Hutch*, 922 S.W.2d at 171.

17

would be out of jail because of the loopholes in the system and the fact that he planned the attack on Officer Welsh, choosing to assault him rather than the larger officer.

The record, exclusive of the unadjudicated acts of misconduct presented at the punishment phase of the trial, amply justifies the jury's sentence. When Appellant choked Officer Welsh, there was evidence that the officer turned blue, was losing consciousness, and was afraid he was going to die. As the State points out, Appellant's defensive theory was not that he did not do it, but that he did it because of a bad reaction to painkillers. The jury apparently did not believe Appellant's defensive theory. The prosecutor compared the range of punishment for assault of a public servant with the range of punishment for aggravated assault of a public servant and argued to the jury that the bodily injury that Appellant inflicted on Officer Welsh in this case was "about as far as you can go before getting to serious bodily injury."

Applying the appropriate standard of review, we hold that the trial court's error in failing to provide the article 37.07 instruction in the jury charge did not egregiously harm Appellant. We overrule his second point.

**Conclusion**

Having overruled Appellant's two points, we affirm the trial court's judgment.

                                                  LEE ANN DAUPHINOT
                                                  JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MEIER, JJ.

LIVINGSTON, J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 14, 2009

19



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-089-CR**

KERRY BOLLMAN                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## CONCURRING MEMORANDUM OPINION[1]

------------

I agree that appellant's two points should be overruled and that his conviction should be affirmed. However, I write separately because I disagree with the majority's use of a dissenting opinion from the court of criminal appeals as its primary basis for explaining the factual sufficiency standard related to the jury's implicit rejection of appellant's affirmative defense.

---

[1] *See* Tex. R. App. P. 47.4.

As the majority correctly indicates, insanity because of involuntary intoxication is an affirmative defense that a defendant must prove by a preponderance of the evidence.  Majority op. at 8; *Mendenhall v. State*, 77 S.W.3d 815, 818 (Tex. Crim. App. 2002); *see* Tex. Penal Code Ann. § 2.04(d) (Vernon 2003).  We determine the factual sufficiency of all of the evidence related to the jury's rejection of an affirmative defense by considering whether that rejection is so against the great weight and preponderance of the evidence as to be manifestly unjust.  *Bigby v. State*, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994), *cert. denied*, 515 U.S. 1162 (1995).

Although the majority's opinion cites the standard as stated by the court of criminal appeals in *Bigby*, by which we are bound, it principally relies on a dissenting opinion from the same court, by which we are not bound, to explain that standard.  Majority op. at 8–11 (citing *Watson v. State*, 204 S.W.3d 404, 421 (Tex. Crim. App. 2006) (Cochran, J., dissenting)); *see Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007); *see also State v. Hardy*,  963 S.W.2d 516, 519 (Tex. Crim. App. 1997) (indicating that even a plurality opinion from the court of criminal appeals is not binding precedent).  For that reason, I respectfully concur.

TERRIE LIVINGSTON
JUSTICE

DELIVERED:  May 14, 2009

2