

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-411-CR

ANGELA K. SPENCE                                                          APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  Introduction

In four issues, Appellant Angela K. Spence appeals from her conviction

for Driving While Intoxicated ("DWI").  We affirm.

### II.  Factual and Procedural Background

On New Years Day in 2007, around 1:30 a.m., Bedford Police Officer

James McClure responded to a dispatch call regarding a possible intoxicated

---

[1] *See* Tex. R. App. P. 47.4.

driver. After locating the vehicle described by dispatch, and observing the driver commit a traffic violation, Officer McClure initiated a stop. He McClure approached the vehicle and asked the driver, later identified as Spence, for her driver's license and insurance. While talking with Spence, Officer McClure smelled a strong odor of alcohol, noticed that Spence had bloodshot, watery eyes, and observed that she had a hard time focusing. When asked if she had been drinking, Spence informed him that she had had one glass of wine about two hours before being pulled over. Officer McClure asked Spence to step out of the vehicle so he could administer standard field sobriety tests. When Spence exited the vehicle and began walking, Officer McClure noticed that she was "very unsteady" and "needed support." After administering the field sobriety tests, Officer McClure placed Spence under arrest for DWI. He then transported her to the Bedford jail. While at the jail, Spence consented to the taking of two breath specimens, which revealed that she had a blood alcohol concentration of .200 and .204, respectively.

The State charged Spence with the offense of DWI. Spence pleaded not guilty. At trial, Spence testified that on December 31, 2006, she had had two glasses of wine while eating dinner with some friends. After dinner, she had gone to a friend's condo and, although given an alcoholic beverage, had not consumed any alcohol. After leaving the condo, she had gone to the Iron

2

Cactus, a Mexican grill and margarita bar, where she remembered having one glass of wine. Her last memory before giving her thumb print in jail was of dancing with her friend, Baxter, at the Iron Cactus and of Baxter leaving her to go get himself a drink.

When questioned about whether she had ever been intoxicated before, Spence testified to the following:

[State]: Have you ever been intoxicated before?

[Spence]: Yes.

[State]: And how much did you drink to make yourself intoxicated?

[Spence]: I have not had that much before in my life, but probably a lot. Maybe—I had shots one time, so shots did it.

[State]: Do you remember how many shots?

[Spence]: Probably four or so.

. . .

[State]: The night that you got intoxicated on those shots—

[Spence]: Yeah.

[State]: You woke up the next morning. Do you remember everything that happened the night before?

[Spence]: I mean, most of it, yeah.

[State]: But not everything.

3

[Spence]: I mean, I don't know to be sure, but I have not been drunk that often, but I think I remember most everything.

In addition to Spence's testimony, the defense introduced evidence regarding C.M., another patron at the Iron Cactus on the night in question, who had allegedly been drugged and sexually assaulted. The defense argued that, like C.M., Spence must have been drugged too and that it was the drug that caused her to continue drinking. To support this argument, the defense introduced an affidavit from E.W., a friend of C.M.'s, stating that C.M.

> is a friend of mine and was staying in my home during the holidays, December 2006.
>
> She went to dinner with me, my roommate, and other friends of mine on 12/31/06 until approx. 10:30 or 11:00 pm. [T]hen we went together to Iron Cactus Bar & Grill for a New Year's Eve party. We arrived at the party at approx. 11:00 pm.
>
> I left the party with several friends around 1:30 am 01/01/07 and [C.M.] stayed behind with my roommate. She had not been acting questionably—she was lucid, calm, and in control when I left the party. [C.M.] did not return home that night. The next morning, [C..M.]'s mother called my roommate and told us that [C.M.] suspected that she had been given a date-rape drug and possibly raped, and that [C.M.] had gone to Parkland Hospital to see a doctor as a result of her suspicion. At that point, my roommate and I went to meet [C.M.] @ Parkland.

The defense also introduced C.M.'s medical records, which showed that C.M. had been admitted to the hospital and tested for STD exposure. The medical records did not confirm that C.M. had been drugged or sexually assaulted.

4

On cross-examination, the State questioned Spence on whether she had ever undergone any kind of testing to determine if she had been drugged. Spence responded that she had not. On recross-examination, when questioned further about whether she had been tested, Spence responded, "I mean, I didn't get a test afterwards, so—but the assumption is absolutely that, you know, there was something else involved."

After taking the matter under advisement, the trial court found Spence guilty of the offense of DWI.

During a combined hearing on Spence's "Motion for Reconsideration of Judgment" and on punishment, the trial court orally stated that "there was an involuntary intoxication in this case." At the close of the hearing, the trial court denied Spence's motion and upheld its judgment of guilty. The trial court sentenced Spence to 120 days' confinement and assessed a $550 fine, suspended the sentence, and placed her on twelve months of community supervision. This appeal followed.

### III. Involuntary Act

In her first three issues, Spence argues that the trial court's finding that Spence was involuntarily intoxicated constitutes a finding that her intoxication was the result of an involuntary act—that is, that Spence did not voluntarily

5

become intoxicated—and, thus, the evidence is legally insufficient to support her conviction. We disagree.

## A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B. Applicable Law

A person who commits an act in violation of a strict liability statute may be held criminally liable even though she might be innocent of any criminal intent. *See State v. Walker*, 195 S.W.3d 293, 298 (Tex. App.—Tyler 2006, no pet.). Strict liability statutes are traditionally associated with the protection of public health, safety, or welfare. *Aguirre v. State*, 22 S.W.3d 463, 473 (Tex. Crim. App. 1999). Generally, the more serious the consequences to the public, the more likely the legislature meant to impose liability without regard to fault. *Thompson v. State*, 44 S.W.3d 171, 180 (Tex. App.—Houston [14th Dist.] 2001, no pet.). In most strict liability offenses, the statutes protect unwitting and unwilling members of the public from the noxious and harmful

6

behavior of others in situations in which it would be difficult for members of the public to protect themselves. *Id*. If a statute plainly dispenses with a culpable mental state as an element of the offense, it is a strict liability statute. *See Walker*, 195 S.W.3d at 298.

Under Texas law, a person commits DWI "if the person is intoxicated while operating a motor vehicle in a public place." Tex. Penal Code Ann. § 49.04 (Vernon 2003). A person is intoxicated if she does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol . . . or any other substance into the body." *Id*. § 49.01(2). Under chapter 49 of the penal code, proof of a culpable mental state is not required for a DWI conviction. *Id*. § 49.11; *see Owen v. State*, 525 S.W.2d 164, 164–65 (Tex. Crim. App. 1975). Therefore, DWI is a strict liability offense. *See Walker*, 195 S.W.3d at 298.

Section 6.01(a) of the penal code provides, however, that, "[a] person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." Tex. Penal Code Ann. § 6.01(a) (Vernon 2003).

In *Rogers v. State*, the court of criminal appeals addressed what this requirement means:

> [T]he 'voluntary act' requirement does not necessarily go to the ultimate act . . . but only that criminal responsibility for the harm must 'include an act' that is voluntary . . . .

7

[C]onduct [is not] rendered involuntary merely because an accused does not intend the result of his conduct. Therefore, *the issue of the voluntariness of one's conduct, or* bodily movements, *is separate from the issue of one's mental state . . . .*

105 S.W.3d 630, 638 (Tex. Crim. App. 2003) (emphasis added).

Various courts of appeals, in addressing the issue of voluntariness, have looked at "involuntary act" or "automatism" as a defense to DWI. *See, e.g., Peavey v. State*, 248 S.W.3d 455, 465 (Tex. App.—Austin 2008, pet. ref'd) (providing a detailed analysis and application of automatism as a defense to DWI); *see also Stamper v. State*, No. 05-02-01730-CR, 2003 WL 21540414, at *1 (Tex. App.—Dallas July 9, 2003, pet. ref'd) (mem. op., not designated for publication) (acknowledging that the appellant incorrectly argued involuntary intoxication when she should have argued involuntary act); *Waters v. State*, No. 01-96-00631-CR, 2001 WL 754759, at *3 (Tex. App.—Houston [1st Dist.] June 29, 2001, no pet.) (not designated for publication) (analyzing whether appellant voluntarily became intoxicated).[2]

---

[2] This is not to be confused with "involuntary intoxication," which is not a defense to DWI. *See Torres v. State*, 585 S.W.2d 746, 749 (Tex. Crim. App. 1979) (stating that involuntary intoxication is a defense to criminal liability for offenses requiring a *culpable mental state* when (1) the accused has exercised no independent judgment or volition in taking the intoxicant, and (2) as a result of his intoxication, the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirement of the law he allegedly violated); *see also Brown v. State*, 290 S.W.3d 247, 251 (Tex. App.—Fort Worth 2009, pet. ref'd) (declaring that the offense of DWI does not require a culpable mental state; therefore, involuntary intoxication is not a

8

In order to assert "involuntary act" as a defense, however, the defendant must produce "evidence of an independent event, such as the conduct of a third party, that could have precipitated the incident." *Rhodes v. State*, 997 S.W.2d 692, 694 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Brown v. State*, 955 S.W.2d 276, 280 (Tex. Crim. App. 1997)). In addition, the defense is available only "if the accused admits committing the act or acts charged and seeks to absolve [herself] of criminal responsibility for engaging in the conduct." *Peavey*, 248 S.W.3d at 465; *Trujillo v. State*, 227 S.W.3d 164, 169 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

## C. Analysis

Here, the trial court stated at the combined hearing on Spence's "Motion for Reconsideration of Judgment" and on punishment, "[T]here was an involuntary intoxication in this case," not that there was an involuntary act. Although Spence invites us to speculate that the trial court really meant to say "involuntary act"; we decline this invitation for two reasons.

First, as involuntary intoxication is not a defense to DWI, and the trial court upheld Spence's conviction, we cannot conclude that the trial court made a contrary finding of involuntary act based solely upon this statement. *See*

defense to DWI); *Aliff v. State*, 955 S.W.2d 891, 893 (Tex. App.—El Paso 1997, no pet.) (same).

9

*Brown*, 290 S.W.3d at 251 (holding that involuntary intoxication is not a defense to DWI); *Aliff*, 955 S.W.2d at 893 (same). Second, the evidence does not support a finding that an involuntary act caused Spence's intoxication.

The record shows that Spence was driving when Officer McClure pulled her over for committing a traffic violation. It also shows that upon making contact with Spence, Officer McClure smelled a strong odor of alcohol, observed that she had bloodshot, watery eyes, and noticed that she had a hard time focusing. Officer McClure testified that Spence was "very unsteady" and "needed support" when she exited her vehicle and began walking. Spence herself testified to having two glasses of wine prior to going to the Iron Cactus and one while she was at the Iron Cactus. Finally, Spence's breath specimens revealed that she had a blood alcohol concentration of .200 and .204.

The record also revealed that (1) Spence did not recall what had occurred from the time her friend Baxter had left her to go and get himself a drink at the Iron Cactus up to her giving her thumb print at the jail, (2) although another patron at the Iron Cactus on the same night as Spence was allegedly drugged and sexually assaulted, those allegations were not confirmed, (3) Spence never testified that anyone drugged her drink, only that "the assumption is absolutely that, you know, there was something else involved," (4) Spence, at one time, had become intoxicated on "about four or so" shots, (5) Spence did not know

10

for sure if she remembered everything the next day when she had been intoxicated on other occasions, (6) there was no evidence pertaining to the one glass of wine that Spence admitted to having at the Iron Cactus—that is, whether she received it directly from an employee or indirectly from a friend or a stranger, (7) there was no evidence that Spence ever left her drink unattended, (8) there was no evidence that anyone placed anything into Spence's drink, and (9) there was no evidence as to the types of drugs that could have been put into Spence's drink and the effect that those drugs might have had on Spence's actions. Thus, the trial court's implicit rejection of Spence's defense of involuntary act is supported by the evidence. *See Howey v. State*, No. 05-08-00483-CR, 2009 WL 264797, at *5–6 (Tex. App.—Dallas Feb. 5, 2009, no pet.) (mem. op., not designated for publication) (concluding that appellant who did not recall driving her car or the events surrounding her arrest was not entitled to the defense of involuntary act because she voluntarily consumed at least two glasses of wine and her assertion that someone might have drugged her was too speculative); *Peavey*, 248 S.W.3d at 465 (reaching the same result on similar facts).

Therefore, because we hold that this is not a case of involuntary act, we further hold that a rational trier of fact could have found that the evidence at trial was sufficient to establish the elements of DWI beyond a reasonable doubt.

*See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778; *see also* Tex. Penal Code Ann. § 49.04 (stating elements of DWI). Accordingly, we overrule Spence's first three issues.

### IV. Constitutional Violation

In her fourth and final issue, Spence contends that "[i]f Texas Penal Code sect. 49.11 requires a finding of guilt for the offense of driving while intoxicated when the acts leading to intoxication were involuntary, it is unconstitutional in violation of due process of law." However, because we do not hold that section 49.11 requires a finding of guilt when the acts leading to intoxication were involuntary, but instead hold that the trial court's finding of involuntary intoxication is not a finding of involuntary act, we do not reach Spence's final issue.[3]

---

[3] Spence also argues that section 49.11 of the Texas Penal Code is unconstitutional based on the elimination of the mental state requirement. Spence's constitutional objections during trial, however, centered on the act of voluntariness and not on the demand that a culpable mental state apply to the offense of DWI. Therefore, Spence has failed to preserve this issue for our review. *See Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) (holding that the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited); *see also Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (holding that even facial constitutional challenges must first be raised at trial).

## V.  Conclusion

Having overruled Spence's dispositive issues, we affirm the trial court's judgment.


BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 5, 2009