

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00888-CR

Harold James **HARRIS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 1, Bexar County, Texas
Trial Court No. 384759
The Honorable John D. Fleming, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Jason Pulliam, Justice

Delivered and Filed:  November 25, 2015

AFFIRMED

On appeal, Harold James Harris argues that his conviction for driving while intoxicated should be reversed because (1) the trial court erred in refusing to give the jury an Article 38.23(a) instruction, and (2) he received ineffective assistance of trial counsel. We affirm.

### BACKGROUND

On February 13, 2012, Christopher Thompson, a San Antonio Police Department officer, was dispatched to the 5400 block of Eisenhauer in San Antonio, Texas. Upon arriving at the location, Thompson saw a multiple-vehicle accident. One of the vehicles was stopped on the road

and facing the wrong direction. Thompson approached the vehicle, which was badly damaged, and saw Harris sitting in the driver's seat. Harris appeared to be asleep. Thompson knocked on the vehicle window several times, and Harris responded. As directed by Thompson, Harris got out of the vehicle. Harris's clothing was disheveled and he was swaying and staggering. Harris was slow to respond to Thompson's questions, had slurred speech, and appeared confused.

After talking to Harris, Thompson started to administer a field sobriety test; however, because Harris was unable to stand, Thompson did not complete the test. Thompson read the warnings on the DIC-24 form to Harris, and Harris said he would provide a blood specimen.[1] Thompson then placed Harris under arrest for driving while intoxicated. A recording device in Thompson's police car recorded the interaction between Thompson and Harris. Approximately three hours after the accident, a registered nurse drew a blood specimen from Harris. Testing of Harris's blood showed a blood alcohol concentration of 0.30 grams per deciliter.

Harris was charged by information with the offense of driving while intoxicated, second offense, a Class "A" misdemeanor. Harris pled not guilty, and the matter was tried to a jury. At trial, the blood test results and the video recording from the police car were admitted into evidence. The arresting officer and several other witnesses testified on the State's behalf. One of the State's witnesses, a physician, testified that it was "very unlikely" that Harris would have had a blood alcohol concentration level of less than 0.08 at the time of the accident.[2]

Harris testified on his own behalf. During his testimony, Harris indicated that he recalled little of the events immediately before and after his arrest. Harris testified that before the accident

---

[1]A DIC-24 form contains the statutory warnings required when a peace officer requests a blood or breath specimen from a person. *See* TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2014).

[2]A person is intoxicated if he has an alcohol concentration of .08 or higher. *See* TEX. PENAL CODE ANN. § 49.01(2)(B) (West 2011).

he had gone to the Legion Hall and had a glass of wine. Another patron offered him a margarita, which he accepted. Harris remembered finishing the margarita, an officer shining a light in his eyes, and trying to obtain a bond the next morning while in jail; he had no memory of what happened in between those events.

Another witness, Rob Reiner, testified on behalf of the defense. Reiner stated that he was present when Harris was at the Legion Hall on the night of the accident. According to Reiner, the patron who offered Harris the margarita had initially ordered the drink for herself, did not like the way the bartender had prepared it, and offered it to Harris.

The jury found Harris guilty. Punishment was tried to the court. The trial court sentenced Harris to 180 days in the Bexar County jail and ordered him to pay a $1000 fine plus court costs.

Harris filed a motion for new trial, claiming he received ineffective assistance of trial counsel. The trial court held a hearing on the motion for new trial, and denied the motion. This appeal ensued.

### JURY INSTRUCTION

In his first issue, Harris argues the trial court erred in refusing to instruct the jury pursuant to Article 38.23(a) of the Texas Code of Criminal Procedure. In response, the State asserts the trial court was correct in refusing to give a 38.23(a) instruction because there was no factual dispute in this case.

A defendant must satisfy three requirements before he is entitled to the submission of a jury instruction under Article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

Article 38.23(a) provides that evidence obtained in violation of the constitutions or laws of the United States or Texas may not be admitted in criminal cases.[3] *Hamal*, 390 S.W.3d at 306. A defendant's right to submission of a jury instruction under Article 38.23(a) is limited to disputed issues of fact that are material to a claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden*, 242 S.W.3d at 509-10.

"[A]n Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (citing *Thomas v. State*, 723 S.W.2d 696, 708 (Tex. Crim. App. 1986)). A fact issue about whether evidence was legally obtained may be raised from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable. *Id*. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Madden*, 242 S.W.3d at 510. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed factual issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id*. The disputed fact must be an essential one in determining the lawfulness of the challenged conduct. *Id*.

Here, Harris's trial counsel made the following request at the charge conference, "So my requested submitted charge is: Before you may consider evidence obtained from the blood draw, you first—you must first find beyond a reasonable doubt that the defendant knowingly gave

---

[3]Article 38.23(a) provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the Article, then and in such event, the jury shall disregard such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. Art. 38.23(a) (West 2005).

consent to have his blood taken." Later, the following exchange took place between Harris's trial counsel and the trial court:

Court:    [Counsel,] just to clear this in my mind a little bit, what is the contested fact as to the consent?

Counsel:   That it was freely and voluntarily given.

Court:    Well, I know that's—but that's the—legal conclusion as to whether it was freely and voluntarily given, but what is the contested alleged facts that—

Counsel:   Well, the case law says that there has to be some affirmative evidence, okay. And so by getting up on the stand and saying that he has no recollection at all, that's contesting that he gave consent. In other words, how can you give consent if you have no memory of it at all?

Court:    Okay. I think that clears it up for me.

The trial denied Harris's request for an Article 38.23(a) instruction.

In his appellate briefing, Harris emphasizes Thompson's testimony to support his argument that he was entitled to an Article 38.23(a) instruction. In particular, Harris points to testimony that Harris was slow to respond to the officer's questions, had slurred speech, appeared confused, and was swaying and staggering.

We conclude the trial court did not err in denying Harris's request for a jury instruction under article 38.23(a). The facts surrounding Harris's statement that he would provide a blood specimen were not disputed at trial. The only dispute involved the legal significance of these facts. When there is no disputed factual issue, the legality of the officer's conduct is determined by the trial judge alone, as a question of law. *Madden*, 242 S.W.3d at 510. "If there is no factual issue of how evidence was obtained, there is only an issue of law which is not for a jury to decide under article 38.23(a)." *Vasquez v. State*, 225 S.W.3d 541, 554 (Tex. Crim. App. 2007). Because the

evidence failed to raise a disputed fact issue, Harris was not entitled to an instruction under Article 38.23(a). We overrule Harris's first issue.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his second, third, and fourth issues, Harris argues that he was denied effective assistance of trial counsel. To prevail on an ineffective assistance of counsel claim, a defendant must prove, by a preponderance of the evidence, that (1) counsel's performance was deficient, *i.e.*, counsel's assistance fell below an objective standard of reasonableness, and (2) he was prejudiced by counsel's deficient performance, *i.e.*, a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Failure to make a showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

Harris raised his ineffectiveness claim in a motion for new trial. At the motion for new trial hearing, Harris called one witness, Megan Roper. Roper testified that she was a licensed attorney and that she had tried about thirteen driving while intoxicated (DWI) cases to verdict. When asked if there was any reason why a defense attorney in a DWI case would put on evidence of a particular drink being made with Everclear, she said she "suppose[d]" "the reasoning behind it would be some sort of involuntary intoxication defense as in the person consuming the alcohol didn't know what they were consuming." Roper further testified that the goal of such a strategy would be "to instruct the jury as to involuntary intoxication, [to] try to raise that as a defense."

The State presented an affidavit from Harris's trial counsel, Scott Simpson. In his affidavit, Simpson explained that he was the second attorney Harris hired to defend him in this case. Harris had fired his first attorney, who told Harris that the evidence against him was overwhelming. Harris hired Simpson to try the case, telling him to "push the case to trial." Prior to trial, Simpson met

with two potential witnesses, one of whom he called as a defense witness at trial. According to Simpson, he and Harris discussed his defense and his testimony numerous times. Harris insisted that his drink was spiked with a foreign substance, but there was no evidence to support it. Simpson stated that the defense he used at trial was the only defense available under the circumstances.

### *Deficient Performance*

We begin by evaluating whether Harris met his burden to prove deficient performance by trial counsel. Generally, in evaluating the effectiveness of counsel, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Therefore, we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id*. Counsel's ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 814. Absent any record evidence to the contrary, we presume counsel's conduct fell within the wide range of reasonable professional assistance. *See id*. at 813-14.

Harris alleges three deficiencies by trial counsel. First, Harris argues trial counsel should not have pursued an involuntary intoxication defense because this defense was unavailable under the facts of this case, and could not lead to a jury instruction on the defense of involuntary intoxication. Second, Harris argues trial counsel should have realized that it would be impossible to convince the jury that having one glass of wine and one "even highly spiked margarita" could

result in a 0.30 blood alcohol concentration. Third, Harris argues that trial counsel should have requested an instruction on the defense of involuntary intoxication.

Some Texas intermediate appellate courts, including this court, have concluded that involuntary intoxication is not available as a defense to driving while intoxicated. *Otto v. State*, 141 S.W.3d 238, 241 (Tex. App.—San Antonio 2004), *rev'd on other grounds*, 173 S.W.3d 70 (Tex. Crim. App. 2005); *Aliff v. State*, 955 S.W.2d 891, 893 (Tex. App.—El Paso 1997, no pet.). In these cases, the appellate courts reasoned that involuntary intoxication is a defense to criminal culpability; however, proof of a culpable mental state is not a required element of the offense of driving while intoxicated. *Otto*, 141 S.W.3d at 241; *Aliff*, 955 S.W.2d at 893.

Here, Harris relies on *Torres v. State*, 585 S.W.2d 746 (Tex. Crim. App. [Panel Op.] 1979), and *Farmer v. State*, 411 S.W.3d 901 (Tex. Crim. App. 2013), to support his allegations that trial counsel's conduct was deficient. In *Torres*, the Texas Court of Criminal Appeals held that the refusal to submit a jury instruction on involuntary intoxication was error in the context of an aggravated robbery prosecution. *Torres*, 585 S.W.2d at 749-50. The court explained that involuntary intoxication is a defense to criminal culpability when a defendant exercised no independent judgment or volition in taking the intoxicant, and as a result of the intoxication, the defendant did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated. *Id.* at 749.

In *Farmer*, the defendant was charged with driving while intoxicated. 411 S.W.3d at 901-02. At trial, the defendant presented evidence that he had mistakenly taken an Ambien pill, a sleep aid, before the accident, and sought an instruction on voluntariness under section 6.01(a) of the Texas Penal Code. *Id.* at 903. The Texas Court of Criminal Appeals concluded the trial court correctly refused to instruct the jury on the issue of voluntariness under section 6.01(a), which requires that the commission of an offense include a voluntary act. *Id.* at 907. The majority,

however, did not address the issue of whether the trial court erred in denying an instruction on the defense of involuntary intoxication, which was not raised as a complaint on appeal. *Id*. at 908 (Cochran, J., concurring).

The crux of Harris's first argument is that trial counsel's performance was deficient because trial counsel was unaware that an involuntary intoxication defense was unavailable under the facts of this case. However, this argument is not supported by the record. First, the record does not show that trial counsel failed to research the law or was unaware of the facts of this case. Second, the record does not show that trial counsel's strategy was to present a bona fide involuntary intoxication defense. The State argues, and we agree, that trial counsel's strategy in this case was more akin to jury nullification. During witness examinations and in closing argument, trial counsel attacked Harris's ability to give consent for a blood specimen, and suggested that Harris was given a "spiked" margarita that caused him to become intoxicated. Based on these actions, the record indicates that trial counsel's strategy was to try to convince the jury to find Harris not guilty, in spite of the evidence against him.

In his second argument, Harris contends that trial counsel was deficient because he did not realize that it would be impossible to convince the jury that having one glass of wine and one "even highly spiked margarita" could result in a .30 blood alcohol concentration. Harris asserts that if trial counsel had "conducted the appropriate research," "he would have known that it was impossible for Harris to have reached .30 blood alcohol with one margarita, even if it was made with 189 proof Everclear." However, Harris's briefing does not cite us to any proof in the record to support these factual assertions, and our own review of the record has not found any such proof.

Finally, in his third argument, Harris contends that trial counsel was deficient in failing to request an instruction on the defense of involuntary intoxication. This argument, which is made in the alternative, is based on the idea that an involuntary intoxication defense was available to Harris.

To support this argument, Harris relies on the concurring opinion in *Farmer*, which asserts that Texas does permit the affirmative defense of involuntary intoxication, even in driving while intoxicated cases. *See id*. at 916-17 (Cochran, J., concurring) ("We have never discussed the applicability of the affirmative defense of involuntary intoxication to DWI prosecutions, although numerous Texas courts of appeals decisions have held that this defense does not apply to DWI cases."). However, as previously stated, in *Farmer* the majority addressed the issue of whether a voluntariness instruction was required under section 6.01(a) of the Texas Penal Code, not whether involuntary intoxication was available as a defense to driving while intoxicated. *See id*. at 905-08.

Again, this court and other Texas appellate courts have held that involuntary intoxication is not available as a defense to driving while intoxicated. *Otto*, 141 S.W.3d at 241; *Aliff*, 955 S.W.2d at 893. In light of these cases, we cannot say that trial counsel's performance was deficient because he failed to request a jury instruction on involuntary intoxication.

Having examined all of Harris's arguments concerning trial counsel's allegedly deficient performance, we conclude that Harris failed to meet his burden to show that trial counsel's representation was deficient. In the absence of such a showing, Harris's claim of ineffective assistance of trial counsel must fail. *See Thompson*, 9 S.W.3d at 813 (noting that failure to make a showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim).

We overrule Harris's second, third, and fourth issues.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

Do not publish