

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-09-00177-CR

JUSTIN HARRIS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

------------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Justin Harris appeals his conviction for evading arrest. We affirm.

### II. Factual and Procedural Background

On July 11, 2007, at a quarter past three in the morning, a black Nissan Sentra pulled into the emergency room sally port at Carrollton's Trinity Medical

---

[1]*See* Tex. R. App. P. 47.4.

Center. Twenty-year-old Appellant, who was on probation for driving while intoxicated, was passed out in the front passenger seat. The driver, a young man named Mario, left the car and entered the emergency room (ER). Visibly upset, he reported that his friend had overdosed after taking Xanax while drinking beer at a party in Irving.

Nurse Ronne Ynosencio went out to the car and observed Appellant unconscious, drooling, and sweating profusely. She also noticed that he had a large wet spot on his pants. ER staff Sonia Horner and Christy Hartley wheeled a stretcher to the car, and Ynocencio and Horner lifted Appellant onto it. Ynosencio attempted to wake him by rubbing her knuckles against his sternum but Appellant did not respond.

As the nurses pulled up the rails and rolled the stretcher toward the ER, Appellant woke up, looked around, and stood upright on top of the stretcher. He then sprung to the ground, landing on his feet. Ynosencio still held one of Appellant's arms, but he swung the other one toward her, breaking free of her grasp, and bolted for the car. He called to Mario, "Come on. Let's go. Let's go. I want to leave." Mario told him, "No. I'm not going to leave. You need to be checked out. I'm worried about you. You were passed out. I want you to be checked out."

Appellant was "awake and alert and angry" as he jumped into the passenger side of the car and continued to plead with Mario, "Get in the car. Take me home."

Carrollton Police Officer Brion Vannucci, who had been dispatched to investigate a disturbance at the hospital, pulled his patrol car into the drive of the ER. He noticed hospital personnel, a security guard and another individual gathered around a black Nissan with someone in the passenger seat. A nurse pointed at the Nissan and said, "He's over there." Officer Vannucci parked a short distance away and walked up to investigate.

As the officer approached, Appellant climbed over the center console and into the driver's seat. The security guard leaned into the driver's side and tried to talk Appellant into letting hospital staff check him out to make sure he was all right. But Appellant put the car in drive and "pressed down on that gas as hard as he could," racing around the small traffic circle, and almost hitting Officer Vannucci and his patrol car. The officer ran back to his marked patrol car, activated his emergency lights and siren, and followed.

Josey Lane is a major divided thoroughfare. Appellant nosed the car into Josey's northbound lane and drove it south toward Hebron. Officer Edward Clark had also responded to the disturbance report from the hospital. He was approaching from the south in his marked patrol car when he saw the black Nissan coming at him in the wrong lane. He stopped just short of the Hebron–Josey intersection and activated his emergency lights and siren. Within thirty feet of Clark's unit, Appellant veered westbound on Hebron. The two patrol cars fell in behind him. With the officers in pursuit, Appellant accelerated to speeds over 100 miles an hour.

At Old Denton Highway, Appellant turned north and raced the two miles up to Indian Run. There, he made a U-turn and sped back to Hebron, taking it west. He made another U-turn and returned east to Old Denton. There, he turned south and then west at Branch Hollow. The chase continued on Branch Hollow to Eisenhower, where Appellant looped back to the intersection of Old Denton and Hebron. He took Old Denton once more south, continuing to just past Branch Hollow, where, after a chase that had lasted approximately fifteen minutes, he attempted another U-turn but lost control of the car as it skidded into a curb.[2]

Appellant climbed out and started walking. The officers exited their vehicles with weapons drawn. Officer Vannucci ordered Appellant to stop and get on the ground but Appellant ignored him and kept going. Vannucci reholstered his weapon, chased Appellant down, and tackled him. Other officers arrived and applied handcuffs as Appellant continued to struggle.

At his trial for evading arrest, Appellant testified that he had no memory of the incident other than having sipped a beer in Mario's car and waking up two days later in jail. A jury found him guilty and also found that he had used the car as a deadly weapon. At the end of the punishment phase, the jury assessed two

---

[2]Officers deployed spike strips several times in Appellant's path. The strips are designed to puncture fleeing suspects' tires and shorten chases. Appellant drove over the strips each time they were set out, and all four of the Nissan's tires sustained damage.

4

years' confinement and a $7,000 fine. The trial court sentenced Appellant accordingly. Appellant now brings seven points on appeal.

### III. Sufficiency of the Evidence

In his first, second, third, sixth, and seventh points, Appellant challenges the sufficiency of the evidence to support the jury's verdict, the trial court's refusal to order a directed verdict, and the jury's deadly weapon finding.

### A. Factual Sufficiency of the Evidence

Appellant's third and sixth points are claims that the evidence is factually insufficient. Factual-sufficiency claims are no longer available in Texas because the court of criminal appeals has held that the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126 (1996)); *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Accordingly, we overrule Appellant's third and sixth points.

### B. Intent

In his first point, Appellant contends that the evidence is legally insufficient to prove that he was aware that he was being chased by a police officer attempting to lawfully arrest or detain him. For the same reason, he contends in his second point that the trial court erred when it denied his motion for directed

verdict. Because a challenge to the denial of a motion for instructed verdict is actually a challenge to the sufficiency of the evidence, *Canales v. State*, 98 S.W.3d 690, 693 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1051 (2003); *McCown v. State*, 192 S.W.3d 158, 160 (Tex. App.—Fort Worth 2006, pet. ref'd), we will review these first two points under the same standard.

The standard for reviewing a claim that the evidence is insufficient is the standard set out by the United States Supreme Court in *Jackson v. Viriginia*. 443 U.S. at 319, 99 S. Ct. at 2789. Applying that standard, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In determining the sufficiency of the evidence to show intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

Viewed in the light most favorable to the verdict, the evidence shows that although Appellant was unconscious when he arrived at the hospital, he soon became awake and alert enough to balance atop a stretcher, jump from it, land on his feet, take a swing at the nurse who still had hold of one arm, and break

away. Nurse Ynosencio testified, "It was a deliberate action to get away, yes, and whatever it took to get away, he was going to do."

Running out to the car, Appellant pleaded with Mario to take him home. When Mario refused, Appellant climbed across the center console of the Nissan, put the car in drive and led multiple police officers in marked police cars with lights flashing and sirens wailing on a chase of some fifteen minutes in duration, reaching speeds over 100 miles an hour. When he wrecked the car, despite officers with weapons drawn ordering him to stop and get on the ground, he continued to try to get away from police until he was tackled and arrested. As Nurse Ynosencio further testified, "He was awake and he was alert and he was aware of the fact that he didn't want to be there."

Furthermore, as the State points out, the evidence shows that Appellant had a reason for wanting to avoid attention from the authorities: underage drinking while on probation, which, the evidence shows, actually led to a motion to revoke probation. The evidence supports a reasonable deduction by the jury that Appellant intentionally fled the police to avoid possibly having his probation revoked.

Viewed under the appropriate standard of review, the evidence is sufficient to support the jury's implied finding expressed by the verdict that Appellant was aware that he was being chased by police officers lawfully attempting to detain or arrest him. Accordingly, we overrule Appellant's first two points.

## C. Deadly Weapon

We also overrule Appellant's seventh point, in which he contends that the evidence is insufficient to support the jury's finding that he used the car as a deadly weapon. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2010). A motor vehicle may become a deadly weapon. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Nurse Ynosencio testified that when Appellant sped around the circle at the ER, he almost hit Officer Vannucci. The evidence also shows that Appellant led officers on a fifteen-minute car chase through residential areas at speeds exceeding a hundred miles an hour. In addition to the officers pursuing in patrol cars, officers on foot deployed speed spikes in Appellant's path and then retracted them before pursuing squad cars ran over them. Officer Vannucci testified that a car could be a deadly weapon. And both he and Officer Clark testified that the manner in which Appellant drove the car put all the officers at risk of serious bodily injury. Viewed in the light most favorable to the verdict, the evidence supports a rational juror's conclusion beyond a reasonable doubt that Appellant used the car as a deadly weapon. *See id.*

## IV. Requested Jury Instruction

In his fourth point, Appellant contends that the trial court erred when it denied the following requested jury instruction on involuntary intoxication:

[I]nvoluntary intoxication is a defense to prosecution for an offense when it is shown that the accused has exercised no independent judgment or volition in taking the intoxicant, and as a result of his intoxication, the accused did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

Appellant's proposed instruction is an incorrect statement of the law. First of all, involuntary intoxication is not "a defense to prosecution" because "defense" is a term of art and exists only if enumerated in the penal code. Tex. Penal Code Ann. § 2.03(a) (Vernon 2003); *Brown v. State*, 290 S.W.3d 247, 252 (Tex. App. Fort Worth—2009, pet. ref'd) (Dauphinot, J., concurring). Although involuntary intoxication is not a defense, it is implicit in the affirmative defense of insanity found in section 8.01(a) of the penal code. Tex. Penal Code Ann. § 8.01(a) (Vernon 2003); *Mendenhall v. State*, 77 S.W.3d 815, 817 (Tex. Crim. App. 2002); *Torres v. State,* 585 S.W.2d 746, 749 (Tex. Crim. App. 1979). The court of criminal appeals has held that it is an affirmative defense to prosecution that, at the time of the alleged offense, the defendant, as a result of severe mental defect caused by involuntary intoxication, did not know that his conduct was wrong. *Mendenhall*, 77 S.W.3d at 817–18. The court has also held, however, that it is not an affirmative defense to prosecution that, at the time of the alleged offense, the defendant, as a result of a mental defect caused by involuntary intoxication, was incapable of conforming his conduct to the requirements of the law he allegedly violated. *Id*.

9

Although Appellant's proposed instruction is defective, a requested charge need not be "in perfect form." *Chapman v. State,* 921 S.W.2d 694, 695 (Tex. Crim. App. 1996). Rather, it must be "sufficient to call the trial court's attention to the omission in the court's charge." *Id.* Here, the trial court understood Appellant's request to be one for an instruction based on the affirmative defense of insanity brought on by involuntary intoxication. Removing the defects from Appellant's proposed instruction and giving it and the record as lenient a reading as possible, we agree with the trial court that Appellant's request sought a jury charge on insanity caused by involuntary intoxication.

In order to be entitled to that charge, though, there must be some evidence in the record to show that, at the time of the alleged offense, Appellant, as a result of severe mental defect caused by involuntary intoxication, did not know that his conduct was wrong. Tex. Penal Code Ann. § 8.01(a); *see Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003).

Even our lenient reading of the record, however, does not support such a charge. There is no evidence that Appellant was intoxicated involuntarily, that is, drugged against his will. Nurse Ynosencio testified that Mario told her that Appellant had been drinking beer and taking Xanax at a party in Irving. Appellant testified that he remembered nothing from the time he took a sip of beer to the time he awoke in jail two days later. He testified that he thought Mario put Xanax in the beer because he knew Mario had a prescription for Xanax and he had found out that Mario put something in someone else's drink sometime before. At

10

most, this self-serving testimony amounts to mere speculation, not evidence. *See Peavey v. State*, 248 S.W.3d 455, 465 (Tex. App.—Austin 2008, pet. ref'd).

And, even if Appellant was intoxicated, and even if we were to speculate that that intoxication was induced upon him involuntarily, there is no evidence that it caused a severe mental defect that rendered Appellant without the ability to realize that his conduct was wrong. An "affirmative defense" requires the accused to bear both the burden of production and the burden of persuasion. Tex. Penal Code Ann. § 2.04 (Vernon 2003); *Zuliani v. State,* 97 S.W.3d 589, 594 n.5 (Tex. Crim. App. 2003); *Alford v. State*, 866 S.W.2d 619, 621 (Tex. Crim. App. 1993). The "severe mental defect" component of this affirmative defense limits its availability if there is no evidence to support that element. *See Coble v. State,* 871 S.W.2d 192, 201 (Tex. Crim. App. 1993), *cert. denied,* 513 U.S. 829 (1994). Appellant failed to produce any evidence, medical or otherwise, that he was suffering from insanity due to involuntary intoxication. Based on the record before us, we hold that the trial court did not err to refuse Appellant's requested instruction, and we overrule his fourth point.

## V. Double Jeopardy

In his fifth point, Appellant claims that the jury's deadly weapon finding punished him twice for the same conduct.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects an accused against a second prosecution for the same offense for which he has been previously

11

acquitted or previously convicted. *Littrell v. State*, 271 S.W.3d 273, 275 (Tex. Crim App. 2008) (citing *Brown v. Ohio*, 432 U.S. 161, 164–65, 97 S. Ct. 2221, 2225 (1977)). It further protects an accused from being punished more than once for the same offense. *Id.*

Appellant acknowledges that he raises this double-jeopardy issue for the first time on appeal, and he does not otherwise assert that he raised it at trial. He contends, however, that he can raise his double-jeopardy complaint for the first time on appeal because (1) the undisputed facts show that a double-jeopardy violation is clearly apparent on the face of the record and (2) enforcement of the usual rules of procedural default serve no legitimate state interest. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). The parties agree that this legal standard applies to determine if Appellant preserved his double-jeopardy claim for review.

Under *Gonzalez*, the critical inquiry is whether the record clearly reflects a double-jeopardy violation. *See id.* at 643–45. We conclude that the record here does not and that Appellant has not satisfied the first prong of the *Gonzalez* test.

There are three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

Double jeopardy is not apparent on the face of the record here because Appellant received a single punishment for a single offense. He was found guilty

12

of evading arrest, which required proof that, using a vehicle, he intentionally fled from a person he knew to be a peace officer attempting lawfully to arrest or detain him. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A) (Vernon Supp. 2010). The jury also found that the manner in which Appellant had used the vehicle in committing the offense made it a deadly weapon.

Even if Appellant did not forfeit his multiple punishments double jeopardy claim, we rely on our reasoning in *Martinez v. State,* 883 S.W.2d 771, 772–73 (Tex. App.—Fort Worth, pet. ref'd), to hold that the deadly weapon finding here does not amount to double jeopardy.

Under the penal code in effect at the time Appellant committed the offense, evading arrest using a motor vehicle was punishable as a state jail felony. Tex. Penal Code Ann. § 38.04(b)(1) (Vernon Supp. 2010). Section 12.35 of the penal code required that one found guilty of a state jail felony be punished for a third-degree felony if it was shown at trial that a deadly weapon was used. *Id.* § 12.35.

In *Martinez*, the defendant was convicted of involuntary manslaughter as a result of driving while intoxicated. *Martinez*, 883 S.W.2d at 772. The jury found that the vehicle Martinez was driving was a deadly weapon. *Id*. On appeal, Martinez made the same argument as Appellant—that the deadly weapon finding violated his right to be free of double jeopardy because the action supporting the deadly weapon finding (driving a vehicle while intoxicated) was also an essential element of the charged offense. *Id*.

13

We rejected that argument then and we reject it now. Section 12.35 of the penal code makes no exception for enhancement of felonies when the instrumentality alleged to be a deadly weapon is also an essential element of the offense. *State v. Brown*, 314 S.W.3d 487, 490 Tex. App.—Texarkana 2010, no pet.); *see Patterson v. State*, 769 S.W.2d 938, 940 (Tex. Crim. App. 1989) (agreeing with lower court's conclusion that "*all* felonies are theoretically susceptible to an affirmative finding of use or exhibition of a deadly weapon"); *Martinez*, 883 S.W.2d at 774. Moreover, a person could evade arrest with a vehicle without using the vehicle as a deadly weapon. The enhancement, therefore, comes from using a vehicle in a manner that subjects others to the risk of death or serious bodily injury, not by merely using a vehicle. Thus, here, Appellant was found guilty of a state-jail felony, which his use of a deadly weapon enhanced to a third-degree felony: one offense, one punishment. We overrule point five.

## VI. Conclusion

Having overruled all of Appellant's points, the judgment is affirmed.

LEE GABRIEL
JUSTICE

PANEL: WALKER, McCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 3, 2011

14