02-09-177-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00177-CR

 

 


 
 
 Justin Harris
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
211th District Court OF Denton
COUNTY

------------

MEMORANDUM
OPINION[1]

----------

I. 
Introduction

          Appellant Justin Harris appeals his
conviction for evading arrest.  We
affirm.

II.  Factual and Procedural Background

          On July 11, 2007, at a quarter past
three in the morning, a black Nissan Sentra pulled
into the emergency room sally port at Carrollton’s Trinity Medical Center.  Twenty-year-old Appellant, who was on
probation for driving while intoxicated, was passed out in the front passenger
seat.  The driver, a young man named
Mario, left the car and entered the emergency room (ER).  Visibly upset, he reported that his friend had
overdosed after taking Xanax while drinking beer at a
party in Irving.

          Nurse Ronne Ynosencio
went out to the car and observed Appellant unconscious, drooling, and sweating
profusely.  She also noticed that he had a
large wet spot on his pants.  ER staff
Sonia Horner and Christy Hartley wheeled a stretcher to the car, and Ynocencio and Horner lifted Appellant onto it.  Ynosencio attempted
to wake him by rubbing her knuckles against his sternum but Appellant did not
respond.

          As the nurses pulled up the rails and rolled
the stretcher toward the ER, Appellant woke up, looked around, and stood upright
on top of the stretcher.  He then sprung
to the ground, landing on his feet.  Ynosencio still held one of Appellant’s arms, but he swung the
other one toward her, breaking free of her grasp, and bolted for the car.  He called to Mario, “Come on. Let’s go. Let’s
go.  I want to leave.”  Mario told him, “No. I’m not going to
leave.  You need to be checked out.  I’m worried about you.  You were passed out.  I want you to be checked out.”

          Appellant was “awake and alert and
angry” as he jumped into the passenger side of the car and continued to plead
with Mario, “Get in the car.  Take me
home.”

          Carrollton Police Officer Brion Vannucci, who had been dispatched
to investigate a disturbance at the hospital, pulled his patrol car into the
drive of the ER.  He noticed hospital
personnel, a security guard and another individual gathered around a black
Nissan with someone in the passenger seat.  A nurse pointed at the Nissan and said, “He’s
over there.”  Officer Vannucci
parked a short distance away and walked up to investigate.

          As the officer approached, Appellant
climbed over the center console and into the driver’s seat.  The security guard leaned into the driver’s
side and tried to talk Appellant into letting hospital staff
check him out to make sure he was all right.  But Appellant put the car in drive and “pressed
down on that gas as hard as he could,” racing around the small traffic circle, and
almost hitting Officer Vannucci and his patrol car.  The officer ran back to his marked patrol car,
activated his emergency lights and siren, and followed. 

          Josey Lane
is a major divided thoroughfare. 
Appellant nosed the car into Josey’s northbound
lane and drove it south toward Hebron. 
Officer Edward Clark had also responded to the disturbance report from
the hospital.  He was approaching from
the south in his marked patrol car when he saw the black Nissan coming at him in
the wrong lane.  He stopped just short of
the Hebron–Josey intersection and activated his
emergency lights and siren.  Within
thirty feet of Clark’s unit, Appellant veered westbound on Hebron.  The two patrol cars fell in behind him.  With the officers in pursuit, Appellant accelerated
to speeds over 100 miles an hour.

          At Old Denton Highway, Appellant
turned north and raced the two miles up to Indian Run.
 There, he made a U-turn and sped back to
Hebron, taking it west.  He made another
U-turn and returned east to Old Denton.  There,
he turned south and then west at Branch Hollow. 
The chase continued on Branch Hollow to Eisenhower, where Appellant looped
back to the intersection of Old Denton and Hebron.  He took Old Denton once more south,
continuing to just past Branch Hollow, where, after a chase
that had lasted approximately fifteen minutes, he attempted another U-turn
but lost control of the car as it skidded into a curb.[2]

          Appellant climbed out and started
walking.  The officers exited their
vehicles with weapons drawn.  Officer Vannucci ordered Appellant to stop and get on the ground but
Appellant ignored him and kept going.  Vannucci reholstered his weapon,
chased Appellant down, and tackled him. 
Other officers arrived and applied handcuffs as Appellant continued to
struggle.

          At his trial for evading arrest,
Appellant testified that he had no memory of the
incident other than having sipped a beer in Mario’s car and waking up two days
later in jail.  A jury found him guilty and
also found that he had used the car as a deadly weapon.  At the end of the punishment phase, the jury
assessed two years’ confinement and a $7,000 fine.  The trial court sentenced Appellant accordingly.  Appellant now brings seven points on appeal.

III.  Sufficiency of the Evidence

          In his first, second, third, sixth,
and seventh points, Appellant challenges the sufficiency of the evidence to
support the jury’s verdict, the trial court’s refusal to order a directed
verdict, and the jury’s deadly weapon finding.

A. Factual
Sufficiency of the Evidence

          Appellant’s third and sixth points are
claims that the evidence is factually insufficient.  Factual-sufficiency claims are no longer
available in Texas because the court of criminal appeals has held that the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable
doubt.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)
(overruling Clewis v. State, 922 S.W.2d 126 (1996)); see Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979). 
Accordingly, we overrule Appellant’s third and sixth points.

B. Intent

          In his first point, Appellant contends
that the evidence is legally insufficient to prove that he was aware that he
was being chased by a police officer attempting to lawfully arrest or detain
him.  For the same reason, he contends in
his second point that the trial court erred when it denied his motion for
directed verdict.  Because a challenge to
the denial of a motion for instructed verdict is actually a challenge to the sufficiency
of the evidence, Canales v. State, 98 S.W.3d 690, 693 (Tex. Crim. App.),
cert. denied, 540 U.S. 1051 (2003); McCown v. State, 192 S.W.3d
158, 160 (Tex. App.—Fort Worth 2006, pet. ref=d),
we will review these first two points under the same standard.

          The standard for reviewing a claim that
the evidence is insufficient is the standard set out
by the United States Supreme Court in Jackson
v. Viriginia. 
443 U.S. at 319, 99 S. Ct. at 2789.  Applying that standard, we view all of the
evidence in the light most favorable to the prosecution to determine whether
any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Id.; Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).

In
determining the sufficiency of the evidence to show intent, and faced with a
record that supports conflicting inferences, we Amust
presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the
prosecution, and must defer to that resolution.@  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991).

          Viewed in the light most favorable to
the verdict, the evidence shows that although Appellant was unconscious when he
arrived at the hospital, he soon became awake and alert enough to balance atop
a stretcher, jump from it, land on his feet, take a swing at the nurse who
still had hold of one arm, and break away. 
Nurse Ynosencio testified, “It was a
deliberate action to get away, yes, and whatever it took to get away, he was
going to do.”

          Running out to the car, Appellant
pleaded with Mario to take him home.  When
Mario refused, Appellant climbed across the center console of the Nissan, put
the car in drive and led multiple police officers in marked police cars with
lights flashing and sirens wailing on a chase of some fifteen minutes in duration,
reaching speeds over 100 miles an hour. 
When he wrecked the car, despite officers with weapons drawn ordering
him to stop and get on the ground, he continued to try to get away from police
until he was tackled and arrested.  As Nurse
Ynosencio further testified, “He was awake and he was
alert and he was aware of the fact that he didn’t want to be there.”

          Furthermore, as the State points out, the
evidence shows that Appellant had a reason for wanting to avoid attention from
the authorities:  underage drinking while
on probation, which, the evidence shows, actually led to a motion to revoke
probation.  The evidence supports a
reasonable deduction by the jury that Appellant intentionally fled the police
to avoid possibly having his probation revoked.

          Viewed under the appropriate standard
of review, the evidence is sufficient to support the jury’s implied finding
expressed by the verdict that Appellant was aware that he was being chased by
police officers lawfully attempting to detain or arrest him.  Accordingly, we overrule Appellant’s first
two points.

C. Deadly
Weapon

          We also overrule Appellant’s seventh
point, in which he contends that the evidence is insufficient to support the
jury’s finding that he used the car as a deadly weapon.  A deadly weapon is “anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.”  Tex. Penal Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2010).  A motor vehicle may become a deadly
weapon.  Drichas v. State, 175 S.W.3d
795, 798 (Tex. Crim. App. 2005).  Nurse
Ynosencio testified that when Appellant sped around
the circle at the ER, he almost hit Officer Vannucci.  The evidence also shows that Appellant led
officers on a fifteen-minute car chase through residential areas at speeds
exceeding a hundred miles an hour.  In
addition to the officers pursuing in patrol cars, officers on foot deployed
speed spikes in Appellant’s path and then retracted them before pursuing squad
cars ran over them. Officer Vannucci testified that a
car could be a deadly weapon.  And both
he and Officer Clark testified that the manner in which Appellant drove the car
put all the officers at risk of serious bodily injury.  Viewed in the light most favorable to the
verdict, the evidence supports a rational juror’s conclusion beyond a
reasonable doubt that Appellant used the car as a deadly weapon.  See id.

IV.  Requested Jury Instruction

          In his fourth point, Appellant
contends that the trial court erred when it denied the following requested jury
instruction on involuntary intoxication:

 [I]nvoluntary
intoxication is a defense to prosecution for an offense when it is shown that
the accused has exercised no independent judgment or volition in taking the
intoxicant, and as a result of his intoxication, the accused did not know that
his conduct was wrong or was incapable of conforming his conduct to the
requirements of the law he allegedly violated. 

 

          Appellant’s
proposed instruction is an incorrect statement of the law.  First of all, involuntary intoxication is not
“a defense to prosecution” because “defense” is a term of art and exists only
if enumerated in the penal code.  Tex.
Penal Code Ann. § 2.03(a) (Vernon 2003); Brown
v. State, 290 S.W.3d 247, 252 (Tex. App. Fort Worth––2009, pet. ref’d) (Dauphinot, J., concurring).  Although involuntary intoxication is not a
defense, it is implicit in the affirmative defense of insanity found in section
8.01(a) of the penal code.  Tex. Penal Code Ann. § 8.01(a) (Vernon 2003); Mendenhall v. State, 77 S.W.3d 815, 817 (Tex. Crim. App. 2002); Torres v. State, 585 S.W.2d 746, 749
(Tex. Crim. App. 1979).  The court
of criminal appeals has held that it is an affirmative defense to prosecution
that, at the time of the alleged offense, the defendant, as a result of severe
mental defect caused by involuntary intoxication, did not know that his conduct
was wrong.  Mendenhall, 77 S.W.3d at 817–18.  The court has also held, however, that it is
not an affirmative defense to prosecution that, at the time of the alleged
offense, the defendant, as a result of a mental defect caused by involuntary
intoxication, was incapable of conforming his conduct
to the requirements of the law he allegedly violated.  Id.

          Although Appellant’s proposed
instruction is defective, a requested charge need not be “in perfect
form.”  Chapman v. State, 921 S.W.2d 694, 695
(Tex. Crim. App. 1996).  Rather,
it must be “sufficient to call the trial court’s attention to the omission in
the court’s charge.”  Id. 
Here, the trial court understood Appellant’s request to be one for an
instruction based on the affirmative defense of insanity brought on by
involuntary intoxication.  Removing the
defects from Appellant’s proposed instruction and giving it and the record as
lenient a reading as possible, we agree with the trial court that Appellant’s
request sought a jury charge on insanity caused by involuntary intoxication.

          In order to be entitled to that
charge, though, there must be some evidence in the record to show that, at the
time of the alleged offense, Appellant, as a result of severe mental defect
caused by involuntary intoxication, did not know that his conduct was
wrong.  Tex. Penal Code Ann. § 8.01(a); see Rogers v. State, 105 S.W.3d 630, 639
(Tex. Crim. App. 2003).

          Even our lenient reading of the record,
however, does not support such a charge.  There is no evidence that Appellant was intoxicated
involuntarily, that is, drugged against his will.  Nurse Ynosencio
testified that Mario told her that Appellant had been drinking beer and taking Xanax at a party in Irving.  Appellant testified that he remembered nothing
from the time he took a sip of beer to the time he awoke in jail two days
later.  He testified that he thought
Mario put Xanax in the beer because he knew Mario had
a prescription for Xanax and he had found out that
Mario put something in someone else’s drink sometime before.  At most, this self-serving testimony amounts
to mere speculation, not evidence.  See Peavey v. State, 248 S.W.3d 455, 465
(Tex. App.––Austin 2008, pet. ref’d).

          And, even if Appellant was
intoxicated, and even if we were to speculate that that intoxication was
induced upon him involuntarily, there is no evidence that it caused a severe
mental defect that rendered Appellant without the ability to realize that his
conduct was wrong.  An “affirmative
defense” requires the accused to bear both the burden of production and the
burden of persuasion.  Tex.
Penal Code Ann. § 2.04 (Vernon 2003); Zuliani v. State, 97
S.W.3d 589, 594 n.5 (Tex. Crim. App. 2003); Alford
v. State, 866 S.W.2d 619, 621 (Tex. Crim. App. 1993).  The “severe mental defect” component of this
affirmative defense limits its availability if there is no evidence to support
that element.  See Coble v. State, 871 S.W.2d 192, 201 (Tex. Crim. App. 1993), cert. denied, 513 U.S. 829 (1994).  Appellant failed to produce any evidence,
medical or otherwise, that he was suffering from insanity due to involuntary
intoxication.  Based on the record before
us, we hold that the trial court did not err to refuse Appellant’s requested
instruction, and we overrule his fourth point.

V. 
Double Jeopardy

          In his fifth point, Appellant claims
that the jury’s deadly weapon finding punished him twice for the same conduct.

          The Double Jeopardy Clause of the
Fifth Amendment, applicable to the states through the
Fourteenth Amendment, protects an accused against a second prosecution for the
same offense for which he has been previously acquitted or previously
convicted.  Littrell v. State, 271 S.W.3d 273, 275 (Tex. Crim
App. 2008) (citing Brown v. Ohio, 432
U.S. 161, 164–65, 97 S. Ct. 2221, 2225 (1977)). 
It further protects an accused from being punished more than once for
the same offense.  Id.

          Appellant acknowledges that he raises
this double-jeopardy issue for the first time on appeal, and he does not
otherwise assert that he raised it at trial. 
He contends, however, that he can raise his double-jeopardy complaint
for the first time on appeal because (1) the undisputed facts show that a
double-jeopardy violation is clearly apparent on the face of the record and (2)
enforcement of the usual rules of procedural default serve no legitimate state
interest.  See Gonzalez v. State, 8 S.W.3d 640, 643
(Tex. Crim. App. 2000).  The parties
agree that this legal standard applies to determine if Appellant preserved his
double-jeopardy claim for review.

          Under Gonzalez, the critical inquiry is whether the record clearly
reflects a double-jeopardy violation.  See id. at
643–45.  We conclude that the record here
does not and that Appellant has not satisfied the first prong of the Gonzalez test.

          There are three distinct types of
double jeopardy claims:  (1) a second
prosecution for the same offense after acquittal; (2) a second prosecution for
the same offense after conviction; and (3) multiple
punishments for the same offense.  Langs v. State, 183 S.W.3d 680,
685 (Tex. Crim. App. 2006).

          Double jeopardy is not apparent on the
face of the record here because Appellant received a single punishment for a
single offense.  He was found guilty of
evading arrest, which required proof that, using a vehicle, he intentionally
fled from a person he knew to be a peace officer attempting lawfully to arrest
or detain him.  See Tex. Penal Code Ann. § 38.04(a), (b)(2)(A)
(Vernon Supp. 2010).  The jury also found
that the manner in which Appellant had used the vehicle in committing the offense
made it a deadly weapon.

          Even if Appellant did not forfeit his
multiple punishments double jeopardy claim, we rely on
our reasoning in Martinez v. State,
883 S.W.2d 771, 772–73 (Tex. App.––Fort Worth, pet. ref’d),
to hold that the deadly weapon finding here does not amount to double jeopardy.

          Under the penal code in effect at the
time Appellant committed the offense, evading arrest using a motor vehicle was
punishable as a state jail felony.  Tex.
Penal Code Ann. § 38.04(b)(1) (Vernon Supp. 2010). Section
12.35 of the penal code required that one found guilty of a state jail felony
be punished for a third-degree felony if it was shown at trial that a deadly
weapon was used.  Id. § 12.35.

          In Martinez,
the defendant was convicted of involuntary manslaughter as a result of driving while
intoxicated.  Martinez, 883 S.W.2d at 772.  The jury found that the vehicle Martinez was
driving was a deadly weapon.  Id. 
On appeal, Martinez made the same argument as Appellant––that the deadly
weapon finding violated his right to be free of double jeopardy because the
action supporting the deadly weapon finding (driving a vehicle while
intoxicated) was also an essential element of the charged offense.  Id.

          We rejected that argument then and we
reject it now.  Section 12.35 of the
penal code makes no exception for enhancement of felonies when the
instrumentality alleged to be a deadly weapon is also an essential element of
the offense.  State v. Brown, 314 S.W.3d 487, 490 Tex. App.––Texarkana 2010, no pet.);
see Patterson v. State, 769 S.W.2d
938, 940 (Tex. Crim. App. 1989) (agreeing with lower court’s conclusion that “all felonies are theoretically
susceptible to an affirmative finding of use or exhibition of a deadly weapon”); Martinez, 883 S.W.2d at 774.  Moreover, a person could evade arrest with a
vehicle without using the vehicle as a deadly weapon.  The enhancement, therefore, comes from using
a vehicle in a manner that subjects others to the risk of death or serious
bodily injury, not by merely using a vehicle. 
Thus, here, Appellant was found guilty of a state-jail felony, which his
use of a deadly weapon enhanced to a third-degree felony:  one offense, one punishment.  We overrule point five.

VI.  Conclusion

          Having overruled all of Appellant’s points,
the judgment is affirmed.

 

 

LEE GABRIEL

JUSTICE

 

PANEL:  WALKER, McCOY, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:   March 3, 2011











[1]See Tex. R. App. P. 47.4.





[2]Officers deployed
spike strips several times in Appellant’s path. 
The strips are designed to puncture fleeing suspects’ tires and shorten
chases.  Appellant drove over the strips
each time they were set out, and all four of the Nissan’s tires sustained
damage.